```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
In re:                                :
                                      :
HAL LUFTIG COMPANY, INC.,             :       24cv166 (DLC)
                                      :
                         Debtor.      :       OPINION AND ORDER
                                      :
                                      :
                                      :
                                      :
------------------------------------- X
```

APPEARANCES:

For Debtor Hal Luftig Company, Inc.
Sheryl P. Giugliano
Michael S. Amato
Ruskin Moscou Faltischek, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556-0190

For Hal Luftig:
Adam L Rosen
1051 Port Washington Blvd.
PO Box 552
Port Washington, NY 11050-0146

Martin J. Foley
Martin J. Foley, PLC
601 S. Figueroa Street, Ste. 2050

For Creditor FCP Entertainment Partners, LLC
John A. Mueller
Richard M. Sherer, Jr.
Lippes Mathias LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216

For the United States:

William K. Harrington
United States Trustee

Paul Schwartzberg

Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

DENISE COTE, District Judge:

In this small business case, the Bankruptcy Court has recommended approval a plan of reorganization that contains a nonconsensual release of a non-debtor.  For the following reasons, that recommendation is rejected.

## Background

On November 22, 2023, the Honorable John P. Mastando III of the United States Bankruptcy Court for the Southern District of New York issued Proposed Findings of Fact and Conclusions of Law (the "Findings") recommending the confirmation of a Small Business Plan of Reorganization under Chapter 11 (the "Plan") for debtor Hal Luftig Company, Inc. (the "Debtor"), subject to certain modifications.  In re Hal Luftig Company, Inc., 655 B.R. 508 (S.D.N.Y. 2023).  Claimant FCP Entertainment Partners, LLC ("FCP") and the United States Trustee have each timely objected. This Opinion assumes familiarity with the Findings and summarizes only the facts necessary to give context to this Opinion's holding.

2

The Debtor is a theatrical production corporation. Hal Luftig ("Luftig") is the Debtor's president and sole shareholder.

On August 12, 2019, FCP, an investor in the Debtor and one of its business partners, initiated an arbitration against the Debtor for breach of contract and against Luftig for breach of fiduciary duty (the "Arbitration"). FCP generally alleged that it did not receive income to which it was entitled from productions of Kinky Boots and Elephant Man.

On April 1, 2022, the arbitrator found the Debtor and Luftig jointly and severally liable to FCP in the amount of approximately $2.6 million. It also found that the Debtor and Luftig were obligated to pay 55% of the net income from Kinky Boots to FCP. The arbitration award was confirmed on October 26, 2022 ("Final Judgment"). Luftig appealed but the Debtor did not and instead filed for bankruptcy.

On December 1, 2022 (the "Petition Date"), the Debtor filed for voluntary Subchapter V small business reorganization. Subchapter V cases are limited to those in which claims do not exceed $7.5 million. Here, the Debtor has listed debt of approximately $3 million. A significant portion of the debt is the Debtor's portion of the Final Judgment. The Debtor and FCP have agreed that the liquidated and unliquidated portions of

3

the Arbitration Award together gave rise to a claim by FCP of $2,862,776 against the Debtor's estate (the "FCP Claim").

The Debtor commenced an adversary proceeding seeking an extension of the automatic stay to non-debtor Luftig and the issuance of a preliminary injunction enjoining FCP from executing on the Final Judgment against Luftig. The Bankruptcy Court granted the requested relief on January 5, 2023. As a consequence, the Luftig appeal to the Court of Appeals of the Second Circuit from the Final Judgment is stayed pending the resolution of the bankruptcy proceedings.

On March 1, 2023, the Debtor filed the Plan, which was supplemented on March 27, 2023. The Plan includes a $500,000 contribution as well as certain additional payments by Luftig. It also subordinates, in right of payment, Luftig's claims against the estate. Of particular relevance to this Opinion, the Plan released all claims against Luftig held by the FCP parties (the "Luftig Release").

FCP and the United States Trustee objected to confirmation of the Plan, in particular the Luftig Release. On July 11, 2023, the Bankruptcy Court conducted a hearing on the Plan. Luftig testified that the Debtor's business relies upon his relationships and experience in the theater industry. He also stated that, if he had to defend against FCP's efforts to

enforce the Final Judgment, his ability to focus on the Debtor's business would be jeopardized and his reputation as a fundraiser would be ruined. He testified that if he does not receive the Luftig Release he may consider filing for personal bankruptcy.

On November 22, the Bankruptcy Court issued its Findings and recommended confirmation of the Plan subject to certain modifications. The Bankruptcy Court noted that its findings regarding the Luftig Release were governed by the standards set forth in in re Purdue Pharma L.P., 69 F.4th 45 (2d Cir. 2023), which was then and remains stayed pending appeal to the U.S. Supreme Court. The Bankruptcy Court found that the Luftig Release was necessary to a successful reorganization because it would enable Luftig to continue to operate the Debtor's business and would secure several material benefits to the Debtor, including Luftig's contributions and agreement to subordinate his claims. Assuming that the Debtor would file a revised plan with certain proposed modifications, the Bankruptcy Court found that the factors described in Purdue weighed in favor of approving the Plan with the Luftig Release.

On November 27, the Debtor filed an amended Plan, which incorporated the modifications to the Plan and the Luftig Release required by the Findings. FCP calculates that it will suffer a net loss of almost $1.8 million with approval of the

Luftig Release. It will receive roughly $1 million from the Debtor's estate and have no ability to recover against Luftig on the Final Award.

On December 6 and 26, the United States Trustee and FCP, respectively, filed their Objections to the Findings.[1] The Debtor filed its Response to Objections on January 9, 2024.

## Discussion

The U.S. Trustee and FCP object to the Plan to the extent that it includes a nonconsensual release of FCP's claims against Luftig, a non-debtor third party. Their objections are well taken.

A bankruptcy court has subject-matter jurisdiction over direct claims against non-debtor third parties that "might have any conceivable effect on the bankrupt estate." Purdue, 69 F.4th at 71 (citation omitted). Under Purdue, a bankruptcy court has authority to approve a non-consensual release of direct claims against a non-debtor pursuant to 11 U.S.C. §§ 105(a) and 1123(b)(6). To the extent claims encompassed by the third-party releases are non-core, the bankruptcy court is required to submit "proposed findings of fact and conclusions of law to the district court, for that court's [de novo] review and

---

[1] FCP states in its objection that it was served with the Findings on December 9, 2023. The Debtor does not contend that FCP's objection is untimely.

issuance of final judgment." Id. (citing Stern v. Marshall, 564 U.S. 462, 471 (2011)).

A final order or judgment "shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." In re CBI Holding Co., Inc., 529 F.3d 432, 460 (2d Cir. 2008) (citation omitted). The district court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(b).

Release of claims held by non-debtors against other non-debtors is a "dramatic measure to be used cautiously" and "is proper only in rare cases." In re Metromedia Fiber Network, Inc., 416 F.3d 136, 141 (2d Cir. 2005) (citation omitted). Purdue set forth seven factors that bankruptcy courts should consider before imposing nonconsensual third-party releases. The bankruptcy court is "required to support each of these factors with specific and detailed findings." Purdue, 69 F.4th at 79 (citation omitted). In setting forth the seven factors, the Second Circuit explained that it "remain[ed] conscious of the heightened potential for abuse posed by such releases." Id. at 77. It added that "[a]lthough consideration of each factor

7

is required, it is not necessarily sufficient -- there may even be cases in which all factors are present, but the inclusion of third-party releases in a plan of reorganization should not be approved." Id. at 79.  Given the "potential for abuse", the Court of Appeals cautioned that courts should exercise "particular care" when evaluating a nonconsensual release.  Id. The proponent of a plan of reorganization under Subchapter V of the Bankruptcy Code has the burden of proving eligibility for confirmation of the plan under 11 U.S.C. § 1191.

The U.S. Trustee and FCP object to the Bankruptcy Court's finding that the Debtor's bankruptcy is a "rare and exceptional" case; to the finding that the Luftig Release was essential to the reorganization; to the finding that Luftig's contribution to the estate is substantial; to the finding that the Plan provides for the fair payment of claims; and to the Bankruptcy Court's determination that FCP's objection to the Plan as an affected creditor should not be given significant weight.

There is a threshold issue of whether nonconsensual releases are available in small business reorganizations.  As the Court of Appeals observed in Metromedia, 416 F.3d at 142, courts are reluctant to permit nonconsensual releases outside the context of asbestos litigation, which is the only set of circumstances in which there is direct statutory support for

such relief. Moreover, there is nothing unique about this small business bankruptcy that would set it apart from many others in which the debtor entity is closely connected to a non-bankrupt principal. There is a great danger that ordering nonconsensual releases of liability to such principals would undermine the carefully balanced structure of the Bankruptcy Code.

In any event, even if nonconsensual releases may be available in small business reorganizations, this is not a case in which it should be permitted. It is only necessary to address one of the several objections made by the Trustee and FCP.

The sixth Purdue factor is "whether the impacted class of creditors overwhelmingly voted in support of the plan with the releases." Purdue, 69 F.4th at 78 (citation omitted). The Court of Appeals found a "reference point to define 'overwhelmingly'" in 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb), "which requires approval by a minimum of 75% of voting creditors in favor of the plan." Id. The Second Circuit described that threshold "to be the bare minimum". Id. at 78-79.

The Bankruptcy Court acknowledged that the sixth factor was not satisfied. It recognized that "the one affected creditor -- FCP -- is unequivocally opposed to the Plan as proposed by the Debtor." For contrast, in Purdue, over 95% of the voters in the

affected personal injury classes voted to accept the plan. Purdue, 69 F.4th at 82. Nevertheless, the Bankruptcy Court found that FCP's objection "has little weight." Not so. It must be given significant if not controlling weight.

The Bankruptcy Court's reasons for overlooking the sixth Purdue factor do not succeed. To justify giving "little" weight to this factor, the Bankruptcy Court first observed that this is a Subchapter V bankruptcy, and as such, confirmation of a plan may occur without the consent of any creditor. See 11 U.S.C. § 1191(b) and (c). That reference is inapposite. These sections do not address the authority of a court to release the debt of a third party, whether with or without the support of a creditor. The standard for confirming a small business bankruptcy that does not include this extraordinary relief to a non-debtor does not excuse the Bankruptcy Court from applying a critical Purdue factor.

The Bankruptcy Court gave one other reason for minimizing the importance of the sixth Purdue factor: that "the Plan is the best possible means of enabling FCP's recovery" and there will be no "tangible financial harm" from the third-party release. This is clearly wrong. With the Luftig Release, FCP has lost its right to pursue its claims against Luftig. Whether Luftig has the funds today to pay his debts does not speak to his

ability in the future to do so or what other legal steps the parties may take to address the FCP debt. Resolving these issues through a nonconsensual release within the Debtor's bankruptcy is not permissible. As the Court of Appeals observed in Metromedia, a non-debtor release operates as a bankruptcy discharge without a filing and the safeguards of the Bankruptcy Code. 416 F.3d at 142.

## Conclusion

The objections raised by FCP and the U.S. Trustee are sustained. The Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law are rejected, and confirmation of the Proposed Plan is denied. The Court refers this matter to the Bankruptcy Court for further proceedings consistent with this Opinion.

Dated:   New York, New York
         March 19, 2024

_____
DENISE COTE
United States District Judge